IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| BEL AIR LIGHTING, INC.,<br><br>   Plaintiff,<br><br>     v.<br><br>PROGRESSIVE LIGHTING, INC.,<br><br>   Defendant. | CIVIL ACTION FILE<br>NO. 1:07-CV-2822-TWT |
| PROGRESSIVE LIGHTING, INC.,<br>a Georgia Corporation,<br><br>   Plaintiff,<br><br>     v.<br><br>LOWE'S HOME CENTERS, INC., et al.,<br><br>   Defendants. | CIVIL ACTION FILE<br>NO. 1:07-CV-2199-TWT |

ORDER

This is a copyright infringement action. It is before the Court on Lowe's Home Centers, Inc.'s Motion for Summary Judgment [Doc. 103], Bel Air Lighting, Inc.'s Motion for Summary Judgment [Doc. 102], and Progressive Lighting, Inc.'s Motion to Exclude Untimely Document and Defenses [Doc. 109]. For the reasons set forth

below, the Court GRANTS Lowe's and Bel Air's motions and DENIES Progressive's motion as moot.

I. Background

Progressive Lighting, Inc. sells residential light fixtures. In 2003, Progressive asked Karyl Pierce Paxton to design new light fixtures that would be marketed to home builders. Paxton is a "nationally-acclaimed designer" of residential light fixtures and other home decor. (Progressive's Mem. in Opp'n to Lowe's Mot. for Summ. J., at 3.) Paxton designed two new collections for Progressive. One was the Cumberland Collection. Paxton's inspiration for this collection was the fleur-de-lis. Fleur-de-lis means "flower of the lily." It is a symbol that "has been used as an ornament or an emblem by almost all civilisations of the old and new worlds." (Lowe's Mem. in Supp. of Mot. for Summ. J., at 16.) In the United States, the fleur-de-lis is associated with the city of New Orleans, particularly its professional football team, the New Orleans Saints. Paxton designed the light fixtures in this collection to create the appearance of a fleur-de-lis. She did this by arranging the features into the overall shape of a fleur-de-lis. The other collection was the Sonoma Collection. Paxton's inspiration for this collection was Sonoma Valley. Sonoma Valley is the birthplace of California's wine industry. Paxton designed the light fixtures in this collection to reflect wine country. She included features such as "stylized apples,

pears and grapes" and "twisted and curled grape curls." (Paxton Dep., Ex. 37, at 2.) In January 2005, Progressive began selling light fixtures from the Cumberland and Sonoma Collections. The Cumberland Collection quickly became very popular. Sales have been over $4 million.

Progressive's customers, however, soon complained that the same light fixtures were available at Lowe's Home Centers, Inc. stores for a lower price. Sometime in 2006, Troy Lee, Progressive's general manager, visited a Lowe's store and looked at the light fixtures for sale. He saw some light fixtures that he believed were copies of the Cumberland Collection. On December 13, 2006, "ha[ving] become aware of the unauthorized copying of [her] sculptural works," Paxton applied for a copyright on the two- and three-dimensional designs of the Cumberland and Sonoma Collections. (Paxton Dep., Ex. 35, at 1.) Initially, the United States Copyright Office rejected her application. An examiner stated that "we have determined that the separable ornamentation (which we assume to be the arrangement of preexisting design elements on the fixtures) is not copyrightable." (Id., Ex. 36, at 1.) "We believe that the placement of preexisting elements around a fixture . . . lacks the [original and creative] authorship necessary to support a claim to copyright." (Id.) Paxton asked the Copyright Office to reconsider. Her attorney explained that the collections "reflect the creative manner in which the [Paxton] arranged the various elements such

that the works are suggestive of the fleur de lis . . . or the California vineyards." (Id., Ex. 37, at 2.) The Copyright Office reconsidered its decision. On April 10, 2007, it granted Paxton's application and issued Copyright Registration No. VA-1-391-615. Paxton then assigned her rights in the copyright to Progressive.

Progressive then contacted Lowe's about the light fixtures. On May 29, 2007, Progressive's attorney sent a letter to Lowe's stating that three of Lowe's light fixtures infringed Progressive's copyright and demanding that Lowe's cease and desist from any further sales. (Lee Dep., Ex. 109, at 1.) ("Your company's '6-Light', '3-Light Down' and '6-Light Pot Rack' chandeliers sold under the 'Portfolio' brand are substantially similar . . . to our client's '6-Light', '3-Light' and '8 Light Pot Rack' chandeliers sold under the 'Cumberland' mark.") Lowe's forwarded this letter to Bel Air Lighting, Inc. Bel Air had supplied Lowe's with the light fixtures at issue and is contractually obligated to indemnify Lowe's for any infringement liability. On July 11, 2007, Bel Air's attorney wrote a letter to Progressive asking for more information about Progressive's copyright. Progressive responded to Bel Air's request. Over the next thirty days or so, Bel Air continued to ask Progressive for more information, including whether Progressive knew a Chinese designer named Da-Young Wang. Bel

Air believed that Wang was the original designer of the light fixtures.[1] Progressive responded to each of Bel Air's requests. It denied any knowledge of Wang. Meanwhile, Bel Air sought its own copyright protection for the light fixtures. On July 21, 2007, Wang assigned his rights in his designs to Bel Air. On August 7, 2007, Bel Air applied for a copyright on Wang's designs. The Copyright Office ultimately rejected Bel Air's application.

While its copyright application was still pending, Bel Air filed an action against Progressive in the United States District Court for the Central District of California. See Bel Air Lighting, Inc. v. Progressive Lighting, Inc., No. CV 07-5616 (C.D. Cal. Aug. 28, 2007). Bel Air asserted claims against Progressive for declaratory relief, copyright infringement, and unfair competition. It alleged that it did not infringe Progressive's copyright, that Progressive's copyright was invalid, and that Progressive was infringing Bel Air's copyright. Progressive soon filed its own action against Lowe's and Bel Air in this Court. See Progressive Lighting, Inc. v. Lowe's Companies, Inc., No. 1:07-CV-2822 (N.D. Ga. Sept. 10, 2007). Progressive asserted claims against Lowe's for copyright infringement. Progressive later amended its complaint to add Bel Air as a defendant. Progressive also moved for transfer of Bel

---

[1] Bel Air now alleges that Christopher Sacco is the original designer of the light fixtures. Sacco used to work with Paxton.

Air's action to this Court. On November 6, 2007, the United States District Court for the Central District of California granted Progressive's motion and transferred the action to this Court. [Doc. 19]. With both actions in this Court, the parties jointly moved for consolidation. On February 19, 2008, this Court granted the motion and consolidated Bel Air's action into this one. [Doc. 38].

Lowe's and Bel Air now move for summary judgment on Progressive's claims for copyright infringement. Lowe's says that Progressive's copyright is invalid because the designs of the light fixtures are not copyrightable and, even if they were, the designs lack sufficient original and creative authorship. Bel Air incorporates Lowe's arguments, but also says that Paxton was not the true or sole author of the designs. Progressive also moves to exclude Bel Air from relying on certain defenses and documents relating to whether Paxton was the true or sole author of the designs. Progressive says that Bel Air did not assert the defenses in its pleadings and did not disclose the documents during discovery.

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light

most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

## III. Discussion

To establish copyright infringement, a plaintiff must first show ownership of a valid copyright. "Copyright protection subsists . . . in original works of authorship fixed in any tangible medium of expression." 17 U.S.C. § 102(a). Works of authorship include "pictorial, graphic, and sculptural works." Id. Pictorial, graphic, and sculptural works include "two-dimensional and three-dimensional works of fine, graphic, and applied art, photographs, prints and art reproductions, maps, globes, charts, diagrams, models, and technical drawings, including architectural plans." 17 U.S.C. § 101. But they do not usually include the design of a useful article. See id. "A 'useful article' is an article having an intrinsic utilitarian function that is not merely to portray the appearance of the article or to convey information." Id. The design of a useful article is a pictorial, graphic, or sculptural work "only if, and only to the extent that, such design incorporates pictorial, graphic, or sculptural features

that can be identified separately from, and are capable of existing independently of, the utilitarian aspects of the article." Id.

Progressive concedes that the light fixtures are useful articles. (Progressive's Mem. in Opp'n to Lowe's Mot. for Summ. J., at 1.) ("There is no dispute that the underlying light[] fixtures are useful articles."); see also Pivot Point Int'l, Inc. v. Charlene Prods., Inc., 372 F.3d 913, 923 (7th Cir. 2004) (beginning its analysis by first determining whether the work is a useful article). But Progressive says that its designs incorporate sculptural features that are separable from the utilitarian aspects of the fixture. There are two types of separability: physical and conceptual separability. Norris Indus. Inc. v. International Tel. & Tel. Corp., 696 F.2d 918, 923 (11th Cir. 1983) ("Both case law and legislative history indicate that separability encompasses works of art that are either physically . . . or conceptually severable.").

Progressive says that the "scroll work on the base of [its] bath bar" light fixtures is physically separable. (Progressive's Mem. in Opp'n to Lowe's Mot. for Summ. J., at 18.) Physical separability means "that after removal of those features which are necessary for the utilitarian function of the article, the artistic features would nevertheless remain intact." Norris, 696 F.2d at 923 (internal quotation marks omitted). But those bath bar light fixtures are not relevant to this action. In Progressive's letter to Lowe's, Progressive's attorney only identified three

chandeliers, not bath bar light fixtures, as infringing products. (Lee Dep., Ex. 109, at 1.) ("Your company's '6-Light', '3-Light Down' and '6-Light Pot Rack' chandeliers sold under the 'Portfolio' brand are substantially similar . . . to our client's '6-Light', '3-Light' and '8 Light Pot Rack' chandeliers sold under the 'Cumberland' mark.") Neither Progressive's complaint nor any of its briefs identify any Lowe's bath bar light fixtures as infringing products.

Even if the bath bar light fixtures were relevant to this action, Progressive has not shown that the scroll work by itself is otherwise copyrightable. "Any copyrighted expression must be 'original.'" Satava v. Lowry, 323 F.3d 805, 810 (9th Cir. 2003). Progressive argues that its designs are original because of "the creative manner in which [Paxton] arranged the various elements such that the works are suggestive of the fleur de lis." (Paxton Dep., Ex. 37, at 3.) It has not, however, argued that any individual element removed from the overall arrangement is original. Indeed, the Copyright Office rejected this argument when it initially denied Paxton's application. "We believe that the placement of preexisting elements around a fixture . . . lacks the [original and creative] authorship necessary to support a claim to copyright." (Id., Ex. 36, at 1.) As Paxton said in her deposition, she is "not the first person to use scroll work on light[] fixtures." (Id. at 256.)

Progressive also says that the arrangement of the features, which creates the appearance of a fleur-de-lis, is conceptually separable. In <u>Norris</u>, the Eleventh Circuit held that conceptual separability extends to "ornamental, superfluous designs contained within useful objects." <u>Norris</u>, 696 F.2d at 924. Examples of features that are conceptually separable include "a carving on the back of a chair," "a floral relief design on silver flatware," and "designs printed on blouses." <u>Id.</u> Conceptual separability, however, does not extend to "functional components of utilitarian articles, no matter how artistically designed." <u>Id.</u> Examples of features that are not conceptually separable include "[an] artistically designed watch face" and "a wheel cover that simulates a wire wheel." <u>Id.</u> at 924, 919.

The arrangement of the features is not conceptually separable. Most, if not all, of the features are functional components of the light fixtures:

> Q. . . . And then the wire goes – does it typically go down to the base, the electric wire?
> A. Yes.
> Q. Okay. And then you have all of these arms that go out to the individual lamp shade, correct?
> A. Correct.
> Q. All right. Now, those arms, do they serve any functional use?
> A. Yes.
> Q. What uses do they serve, functional uses?
> A. To thread the wire through to the light source.
> . . . .
> Q. Okay. And the part that you circled that has what you call superfluous curls, that's got a wire running in it, correct?
> A. That's correct.

> . . . .
> Q. . . . If you remove from this picture the parts of the chandelier that served, help to serve the useful purpose of communicating electricity so that the light could come on, if you remove all of these useful parts, you would have little or nothing left of this picture, would you?
> MS. GENTRY: Object to form.
> WITNESS: Yes.

(Paxton Dep. at 253-55.) Because the features are functional components, it does not matter that they are creatively arranged to create the appearance of a fleur-de-lis. See Norris, 696 F.2d at 924. As the Copyright Office has explained, such features are inseparable from the utilitarian aspects of the fixture:

> The test of conceptual separability, however, is not met by merely analogizing the general shape of a useful article to works of modern sculpture, since the alleged 'artistic features' and the useful article cannot be perceived as having separate, independent existences. The shape of the alleged 'artistic features' and of the useful article are one and the same, or differ in minor ways: any differences are de minimis. The mere fact that certain features are nonfunctional or could have been designed differently is irrelevant under the statutory definition of pictorial, graphic, and sculptural works. Thus, the fact that a light[] fixture might resemble abstract sculpture would not transform the light[] fixture into a copyrightable work.

Compendium II: Copyright Office Practices § 505.03.

Progressive has not adequately addressed the Eleventh Circuit's opinion in Norris. First, Progressive says that the Eleventh Circuit "relied entirely on physical separability, merely glossing over the issue of conceptual [sic] similarity." (Progressive's Mem. in Opp'n to Lowe's Mot. for Summ. J., at 18.) But the Eleventh

Circuit clearly addressed both physical and conceptual separability. See Norris, 696 F.2d at 923 (beginning its discussion of conceptual separability after the sentence "Norris argues that, even if not physically separable, the aesthetically pleasing pattern formed by the spokes is nevertheless conceptually separable").

Second, Progressive says that Norris is distinguishable because "[t]he design elements in Norris were not arranged so as to suggest a specific idea, such as a fleur-de-lis." (Progressive's Mem. in Opp'n to Lowe's Mot. for Summ. J., at 18.) But Norris did involve similar facts. The plaintiff in Norris "created a design for a wheel cover that simulates a wire wheel." Id. at 919 (emphasis added). Just as Progressive relies on the creative arrangement of its features, so did the plaintiff in Norris:

> The district court considered the ornamental and utilitarian aspects of Norris' wheel covers to be inseparable. The court noted that the appearance of a wire wheel was conveyed by the entire wheel cover taken as a whole. The record indicates that Norris sought copyright registration for the entire wheel cover. Even if the arrangement of spokes could be identified separately, however, they are incapable of existing independently. As the Register and the district court observed, the pattern resulting from the placement of spokes is an inseparable component of the wheel cover.

Id. at 923.

Third, Progressive says that Norris is distinguishable because the Copyright Office refused to issue a registration for the wheel cover in Norris, while it did issue a registration for Paxton's light fixture designs. But that fact was not essential to the

decision in Norris. A certificate of copyright registration is only "prima facie evidence of the validity of the copyright." 17 U.S.C. § 410. A defendant can rebut this presumption of validity with "some evidence or proof to dispute" the copyright. Entertainment Research Group, Inc. v. Genesis Creative Group, Inc., 122 F.3d 1211, 1217 (9th Cir. 1997). Indeed, the presumption of validity "merely orders the burdens of proof. The plaintiff should not ordinarily be forced in the first instance to prove all of the multitude of facts that underline the validity of the copyright unless the defendant, by effectively challenging them, shifts the burden of doing so to the plaintiff." Carol Barnhart Inc. v. Economy Cover Corp., 773 F.2d 411, 414 (2d Cir. 1985). As set forth in the discussion above, Lowe's has presented sufficient evidence to dispute Progressive's copyright.

Because the evidence shows that the sculptural features of Progressive's designs are inseparable from the utilitarian aspects of the light fixtures, Progressive's designs are not copyrightable. Without a valid copyright, Progressive cannot establish copyright infringement. Therefore, Lowe's and Bel Air are entitled to summary judgment on Progressive's claims for infringement. Because Bel Air is entitled to summary judgment based on copyright invalidity, it is not necessary to decide either Bel Air's independent arguments for summary judgment or Progressive's motion to exclude.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS Lowe's Home Centers, Inc.'s Motion for Summary Judgment [Doc. 103] and Bel Air Lighting, Inc.'s Motion for Summary Judgment [Doc. 102]. The Court DENIES Progressive Lighting, Inc.'s Motion to Exclude Untimely Document and Defenses [Doc. 109] as moot.

SO ORDERED, this 15 day of March, 2010.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge